## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**IOU CENTRAL, INC. d/b/a IOU FINANCIAL, INC.,**

      **Plaintiff,**

v.

**ALEXANDER L. KRYCHEV, SUZANA GOMEZ VIANNA, ANNA M. WILEWKSI-TURON, WOJCIECH WILEWSKI, AS TRUSTEES OF THE WILEWSKI WOJCIECH TRUST, and CSA NUTRITION, INC.,**

      **Defendants.**

**CIVIL ACTION FILE NO. 1:20-CV-2675-MHC**

### ORDER

This case comes before the Court on Plaintiff IOU Central, Inc. d/b/a IOU Financial, Inc. ("IOU")'s Motion for Final Default Judgment Against Defendants Krychev, Gomez-Vianna, and CSA ("Mot. for Default J.") [Doc. 20].

## I.   BACKGROUND

On January 3, 2020, IOU filed an Amended Complaint [Doc. 8] in the United States District Court for the Middle District of Georgia asserting claims for declaratory judgment (Count I), breach of instruments (Count II), breach of

fiduciary duty and conversion (Count III), quantum meruit/unjust enrichment (Count IV), money had and received (Count V), equitable lien/equitable mortgage (Count VI), constructive trust (Count VII), and attorney's fees (Count VIII) against Defendants.  Defendants CSA Nutrition, Inc. ("CSA"), Alexander Krychev ("Krychev"), and Suzana Gomez Vianna ("Vianna") were served with the Amended Complaint on January 15, 2020.  See Returns of Service [Docs. 13-15].[1]

CSA, Krychev, and Vianna did not appear, file an answer, or otherwise respond to the Complaint [Doc. 1] or the Amended Complaint.  On February 6, 2020, IOU filed its Application for Clerk's Entries of Default Against Defendants Krychev, Vianna, and CSA [Doc. 16], and the Clerk entered default against Krychev, Vianna, and CSA on February 7, 2020.  On April 3, 2020, IOU filed its Motion for Default Judgment.  On May 14, 2020, the United States District Court for the Middle District of Georgia issued an order [Doc. 22] transferring the case to this Court.[2]  No party has responded to the Motion for Default Judgment.

---

[1] No proof that the other Defendants, Anna M. Wilewski-Turon and Wojciech Wilewski, as trustees of the Wilewski Wojciech Trust, were served appears on the docket.  In its Motion for Default Judgment, IOU withdraws its claims as to these two Defendants.  Mot. for Default J. at 6, 20.  Accordingly, all claims against them are **DISMISSED**.

[2] Out of an abundance of caution, after this case was transferred, this Court directed the Clerk to mail copies of the transfer order and Plaintiff's Motion for Default Judgment to Krychev, Gomez-Vianna at the address listed in the Returns

## II.    LEGAL STANDARD

If a defendant fails to plead or otherwise defend a lawsuit within the time required by Federal Rule of Civil Procedure 12(a)(1)(A), upon motion, the clerk must enter default against the defendant pursuant to Federal Rule of Civil Procedure 55(a).  A default constitutes admission of all well-pleaded factual allegations contained in the complaint, but is not considered an admission of facts that are not well-pleaded or conclusions of law.  Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005).  "A motion for the Court's entry of judgment by default is not granted as a matter of right, and in fact is judicially disfavored.  That is why [Rule] 55(b)(2) vests the Court with judicial discretion in determining whether the judgment should be entered."  Patray v. Nw. Publ'g, Inc., 931 F. Supp. 865, 868 (S.D. Ga. 1996) (internal footnote and citation omitted). The United States Court of Appeals for the Eleventh Circuit has instructed that "[e]ntry of judgment by default is a drastic remedy which should be used only in extreme situations" and that courts "must respect the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his

---

of Service, and to CSA at the addresses of its registered agent and corporate officers as listed in the database of the Nevada Secretary of State.  Sep. 30, 2020, Order [Doc. 29].  No responses were received from any of those parties.

3

day in court." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316-17 (11th Cir. 2002) (quoting Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)).

A default judgment may be entered by the court only if the well-pleaded factual allegations of the complaint, which are deemed admitted by reason of default, provide a sufficient legal basis for such entry. Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)[3] (internal footnote omitted) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). "The court must therefore examine the sufficiency of plaintiff's allegations to determine whether plaintiff is entitled to an entry of judgment by default." Fidelity & Deposit Co. of Md. v. Williams, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

The Supreme Court has explained that the pleading standard of Rule 8 of the Federal Rules of Civil Procedure

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

> does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotations omitted).

> Under most circumstances . . . applying Twombly[4]/Iqbal's pleading standards in the default judgment is wholly consistent with Nishimatsu's 'well-pleaded allegations of fact' standard, and thus in determining whether a party was entitled to default judgment, the Court would apply Nishimatsu's 'well-pleaded allegations of fact' in light of Twombly/Iqbal's plausibility gloss.

Functional Prods. Trading, S.A. v. JITC, LLC, No. 1:12-CV-0355-WSD, 2014 WL 3749213, at *17 (N.D. Ga. July 29, 2014) (adopting Report and Recommendation) (listing recent unreported decisions within this circuit finding Iqbal relevant to the default judgment inquiry).

## III.   DISCUSSION

The Court finds that Defendants have not responded to the Amended Complaint within the time allowed by Rule 12 of the Federal Rules of Civil Procedure. The Clerk appropriately made an entry of default as provided by Rule 55(a) of the Federal Rules of Civil Procedure. A default judgment may be entered

---

[4] Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

by the Court only if the well-pleaded factual allegations of the complaint, which are deemed admitted by reason of the default, provide a sufficient legal basis for such entry.  Nishimatsu, 515 F.2d at 1206.

A.      **Factual Basis for Entry of Default**

The well-pleaded allegations in IOU's Amended Complaint are deemed admitted by reason of default, and show as follows:

On May 5, 2014, non-party Mark Burke ("Burke") applied on IOU's website for a commercial loan (the "Loan") for CSA on behalf of CSA, Krychev, and Vianna.  Am. Compl. ¶ 7.  The Loan was allegedly for the expansion of CSA's dietary product line, to launch an advertising campaign to support a new dietary supplement known as "Podium Gold."  Id.  Burke, Krychev, and Vianna were CSA's owners/officers and knew of, consented to, benefited from, and ratified Burke's application for the Loan.  Id. ¶¶ 7-8.

On May 30, 2014, Burke electronically executed on IOU's website a Promissory Note [Doc. 20-2] on behalf of CSA for the principal sum of $100,000.00 with a loan guaranty fee of $9,630.00.  Id. ¶ 10.  The Promissory Note includes a security agreement by which Burke and CSA, as recipients of the Loan funds, encumbered their real and personal property as collateral for the Loan.  Id.

¶ 11.  Burke also executed on IOU's website a Personal Guaranty Agreement

("Guaranty") [Doc. 20-3] unconditionally guaranteeing the Promissory Note and

its security agreement.  Id. ¶ 12.  Burke executed on IOU's website an electronic

debit agreement [Doc. 20-4] authorizing electronic Loan payments from CSA's

account and approved disbursement of the Loan funds; [5] CSA, Burke, Krychev,

and Vianna received the Loan funds by wire transfer from IOU's bank account to

their bank account.  Id. ¶¶ 14-16. [6]

---

[5] Krychev and Vianna are domiciled in California.  Am. Compl. ¶ 2.  The
Amended Complaint does not appear to allege any relevant contacts between these
individuals and Georgia, other than their agent Burke applying for the Loan via
IOU's website.  However, a party waives the defense of lack of personal
jurisdiction by failing to make a motion under Federal Rule of Civil Procedure 12
or including it in a responsive pleading.  FED. R. CIV. P. 12(h)(1)(B) (referencing
FED. R. CIV. P. 12(b)(2).  "A party does not, however, waive its defense for lack of
personal jurisdiction simply by failing to appear and thus defaulting, even if the
party received proper service of the action.  While it is preferred that a party
engage the litigation process by making an appearance for the limited purpose of
challenging the court's jurisdiction, a defendant is always free to ignore the judicial
proceedings, risk a default judgment, and then challenge that judgment on
jurisdictional grounds in a collateral proceeding." Baragona v. Kuwait & Gulf
Link Transp. Co., 691 F. Supp. 2d 1351, 1360 (N.D. Ga. 2009) (alteration
accepted).

[6] The Promissory Note and Guaranty both contain a mandatory arbitration
provision.  Promissory Note § 13; Guaranty § 10.  Although the United States
Court of Appeals for the Eleventh Circuit has not addressed the issue, other Circuit
Courts of Appeals and at least two other district courts within this Circuit have
found that a party's default in particular circumstances waives its right to
arbitration.  See Baker & Taylor, Inc. v. AlphaCraze.Com Corp., 602 F.3d 486,
492 (2d Cir. 2010) (citations omitted); General Star Nat. Ins. Co. v. Administratia

Shortly after their receipt of the Loan funds, CSA, Burke, Krychev, and Vianna breached the Loan instruments and then disposed of CSA's assets, rendering CSA insolvent.  Id. ¶ 18.  Burke was the agent of CSA, Krychev, and Vianna, who did not disclose to IOU their considerable prior debt and did not intend to or could not repay the Loan.  Id. ¶¶ 19-20.  CSA, Krychev, and Vianna, through Burke, made false representations to and failed to disclose material facts to IOU, including that they lacked the intent or ability to repay the loan and intended to close CSA and dispose of its assets.  Id. ¶ 22.  IOU relied upon Burke's, CSA's, Krychev's, and Vianna's misrepresentations and believed them to be honest and accurate.  Id. ¶ 23.  IOU provided the Loan funds to CSA, Krychev, and Vianna with the expectation of repayment.  Id. ¶ 28.  CSA, Krychev, and Vianna breached

---

Asigurarilor de Stat, 289 F.3d 434, 438 (6th Cir. 2002) (citations omitted); Menorah Ins. Co., Ltd. v. INX Reinsurance Corp, 72 F.3d 218, 223 (1st Cir. 1995); Reliabill Sols., LLC v. Nova Vitae Treatment Ctrs. Inc., No. 19-25133-Civ-Scola, 2020 WL 3410754, at *1 n.1 (S.D. Fla. June 22, 2020); Camber Corp. v. Viatech, Inc., No. 5:16-cv-484-MHH, 2017 WL 6406483, at *3-4 (N.D. Ala. Dec. 15, 2017).  The Court notes that the Eleventh Circuit Court of Appeals has affirmed the district court's grant of a motion to set aside default and compel arbitration. See Sherrard v. Macy's System and Tech. Inc., 724 F. App'x 736, 740 (11th Cir. 2018).  However, no such motion is before the Court at this time.  Thus, the Court finds that the arbitration provisions in the Promissory Note and Guaranty do not preclude granting default judgment against Defendants.

the Loan instruments, did not make payments, violated the Loan terms, and are in default on the Loan.  Id. ¶ 26.

The Amended Complaint alleges that CSA, Krychev, and Vianna are jointly and severally liable for the Loan because, *inter alia*, they constitute a joint enterprise and acted as each other's agents, they operate as a partnership, and Krychev and Vianna operated CSA as their alter-ego and disregarded it as a separate entity.  Id. ¶ 21.  It also alleges that the Loan instruments attach to all of CSA's, Krychev's, and Vianna's property and assets, including the parcel at 3559 Shadow Creek Drive, Danville, CA 94506, owned by Krychev and Vianna.  Id. ¶ 24.

### B.  Legal Basis for Default Judgment

#### 1.  Declaratory and Equitable Relief (Count I)

In Count I of the Amended Complaint, IOU requests that the Court declare that CSA, Krychev, and Vianna are jointly liable for the Loan instruments or, alternatively, award damages against CSA, Krychev, and Vianna.  Am. Compl. ¶¶ 44-45.  In its Motion for Default Judgment, IOU withdraws its damages claim and requests that the Court declare that CSA, Krychev, and Vianna are jointly liable for the Loan and reform the Loan instruments to reflect a senior secured interest on their property.  Mot. for Default J. at 13.

Burke executed the Loan instruments on behalf of CSA. Am. Compl.

¶¶ 10, 12. Pursuant to the Promissory Note, CSA granted to IOU a security

interest in:

> The following property that [CSA] now owns or shall hereafter acquire
> or create: (1) any and all amounts owing to [CSA] now or in the future
> from any merchant processor(s) processing charges made by customers
> of [CSA] via credit card or debit card transactions[;] and (2) all other
> tangible and intangible personal property, including, but not limited to:
> (a) inventory, (b) equipment, (c) investment property, including
> certificated and uncertificated securities, securities accounts, security
> entitlements, commodity contracts and commodity accounts, (d)
> instruments, including promissory notes, (e) chattel paper, including
> tangible chattel paper and electronic chattel paper, (f) documents,
> (g) letter of credit rights, (h) accounts, including health care insurance
> receivables, (i) deposit accounts, (j) general intangibles, including
> payment intangibles and software, and (k) as-extracted collateral as
> such terms may from time to time be defined in the Uniform
> Commercial Code. The collateral includes all accessions, attachments,
> accessories, parts, supplies and replacements for the collateral, all
> products, proceeds and collections thereof and all records and data
> relation thereto.

Promissory Note ¶ 20. "Under Georgia law, a mortgage is created when a property

owner uses that property as security for his debt to another. Because a mortgage

merely grants a lien against the property, as opposed to passing title to the same,

'[n]o particular form is necessary to constitute a mortgage.'" Baxter v. Bayview

Loan Servicing, LLC, 301 Ga. App. 577, 582 (2009) (quoting O.C.G.A.

§ 44-14-31) (other citations omitted). Thus, by its default, CSA has admitted that

IOU has a mortgage on CSA's property as defined in the Promissory Note.

IOU also requests that the Court reform the Promissory Note and declare that Krychev and Vianna are jointly liable with IOU for the Loan instruments, which IOU alleges created a security interest in Krychev's and Vianna's property. Mot. for Default J. at 12.

> "Reformation as applied to a contract is a remedy cognizable in equity for the purpose of correcting an instrument so as to make it express the true intention of the parties, where from some cause, such as fraud, accident, or mistake, it does not express such intention. . . . Equity will reform a written instrument <u>for the unilateral mistake of one party accompanied by fraud or inequitable conduct on behalf of the other party."</u>

<u>Cotton States Mut. Ins. Co. v. Woodruff</u>, 215 Ga. App. 511, 511-12 (1994) (internal quotation marks and citations omitted, alteration accepted, emphasis added). "A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence." O.C.G.A. § 23-2-21. IOU contends that Krychev and Vianna fraudulently induced IOU to approve the Loan, and that IOU relied upon Krychev's and Vianna's representations to approve the Loan. <u>See</u> Mot. for Default J. at 12-13.

Krychev and Vianna made false representations to IOU through their agent Burke; specifically, they failed to disclose their lack of ability to perform the Loan instruments, concealed numerous undisclosed debts, and failed to disclose their intent to close CSA and dispose of its assets to a foreign investor. Am. Compl.

11

¶¶ 22, 36; see also id. ¶¶ 37, 39.  However, the Amended Complaint does not assert that IOU erroneously failed to make Krychev and Vianna parties to Loan instruments.  Rather, it states that IOU relied upon Krychev's and Vianna's misrepresentations and omissions in approving the Loan and paying the Loan funds to CSA.  Id. ¶¶ 23, 38.  In other words, IOU's "mistake" was approving the Loan, not failing to make Krychev and Vianna co-borrowers.  Reforming the Promissory Note to make Krychev and Vianna co-borrowers with CSA would not correct the Promissory Note to reflect the parties' true intentions.  Accordingly, the Court declines to reform the Loan instruments and to declare that CSA, Krychev, and Vianna are jointly and severally liable for the Loan instruments.[7]

---

[7] IOU requests that the Court "take judicial notice" of a motion for default judgment granted in "an identical case," IOU Central Inc. v. ICAR Collision Center, Inc., No. 1:19-cv-4534-CC (N.D. Ga. Oct. 9, 2019) ("ICAR").  Mot. for Default J. at 6.  Courts may judicially notice only "an adjudicative fact."  FED. R. EVID. 201(a).  Thus, this Court "may take judicial notice of another court's order for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation and related filings."  In re Delta Res., Inc., 54 F.3d 772, 725 (11th Cir. 1995) (internal quotation marks and citation omitted, alteration accepted).  Regardless, unlike the Amended Complaint in this case, the complaint in ICAR alleged that the defendants were mistakenly omitted from the loan instruments.  See Compl. ¶ 60, ICAR.

### 2.    Breach of Instruments and Related Relief (Count II)

In Count II of the Amended Complaint, IOU seeks a judgment against CSA, Krychev, and Vianna jointly and severally for the unpaid Loan balance, interest, attorney's fees, costs, and other charges.  Am. Compl. ¶¶ 52-53.  "A promissory note is an unconditional obligation, sufficient in itself to support a cause of action." Brooks v. McCorkle, 174 Ga. App. 132, 132 (1985) (internal quotation marks and citation omitted).  As the holder of the Promissory Note, IOU is entitled to enforce it.  O.C.G.A. § 11-3-301.

CSA promised to pay IOU $100,000.00 (the Loan principal), plus interest and fees.  Promissory Note ¶ 2.  CSA breached the Promissory Note and is in default on the Loan.  Id. ¶¶ 18, 26.  Pursuant to the Promissory Note's acceleration clause, when CSA defaulted, the following "became immediately due and payable":

> (i) the whole of the Principal sum of this Note, (ii) Note Interest, Default Interest, Late Charges, and all other sums as provided for in this Note including the Loan Guarantee Fee, and (iii) all sums advanced and costs and expenses incurred by Lender in connection with this Loan, including attorneys' fees and any other costs incurred by Lender in enforcing Borrower's obligations under this Note.

Promissory Note ¶ 11.  Because CSA has admitted by virtue of its default that it executed and breached the Promissory Note, and has offered no affirmative defenses, IOU is entitled to a default judgment against CSA for the Loan principal,

13

interest, attorney's fees, and costs.  Id.; see Brooks, 174 Ga. App. at 132.
However, since the Court declines to reform the Promissory Note to make Krychev
and Vianna co-borrowers with CSA, IOU is not entitled to default judgment
against them for the Loan principal, interest, attorney's fees, and costs.

IOU's Chief Operating Officer affirms that IOU is entitled a judgment in the
amount of $206,440.52, consisting of the following:

- $104,543.72 in unpaid principal, including the $9,630.00 loan guaranty fee;

- $82,452.20 in accrued pre-judgment interest at 14.99% per annum from June
  19, 2014 through March 31, 2020;

- $18,699.60 in attorney's fees (10% of the principal plus interest);

- $45.00 in non-sufficient funds fees;

- $400.00 in court filing fees; and

- $300.00 in service of process fees.

Pl.'s Verification [Doc. 20-7] ¶ 5 (citing Batch Invoice [Doc. 20-6] for service of
process fees).  The Court finds that as a result of CSA's default, pursuant to the
Promissory Note, IOU is entitled to this requested Loan principal, interest,
attorney's fees and costs.  See Promissory Note ¶¶ 2, 5, 9, 11.

### 3.    Breach of Fiduciary Duty (Count III)

In Count III of the Amended Complaint, IOU alleges that Krychev and

Vianna breached their fiduciary duties to IOU by misusing CSA's property, assets,

and proceeds after CSA's insolvency to benefit themselves, including by paying

themselves; satisfying personal debts; converting the property by selling the

Podium Gold product to an unidentified investor in Vienna, Austria; and causing

CSA's business and corporate status to collapse.  Am. Compl. ¶ 57.  Under

Georgia law, the directors of an insolvent corporation are in a fiduciary

relationship to the corporation's creditors.  Ga. Commercial Stores, Inc. v.

Forsman, 342 Ga. App. 542, 546 (2017) (citations omitted).

> [W]hen a corporation becomes insolvent its directors are bound to manage the remaining assets for the benefits of its creditors, and cannot in any manner use their powers for the purpose of obtaining a preference or advantage to themselves.  Thus, corporate officers and directors may not give preference to existing debts which the corporation owed to other persons, and for which such officers and directors were primarily liable unless a preference or payment is made in the performance of an agreement entered into at or prior to the time when the liabilities to the creditors were incurred, or before the insolvency of the corporation.

U.S. Capital Funding VI, Ltd. v. Patterson Bankshares, Inc., 137 F. Supp. 3d 1340,

1375 (S.D. Ga. 2015) (internal quotation marks and citations omitted).

> If the managing officers and directors violate their fiduciary duty to the creditors of the insolvent corporation by making a preferential transfer of corporate assets to themselves, a creditor may bring an action against

the officers and directors seeking to set aside the transfer and recover the monies paid to them as impermissible preferences.

Ga. Commercial Stores, 342 Ga. App. at 547 (citations omitted).

Krychev and Vianna disposed of CSA's assets, rendering it insolvent. Am. Compl. ¶¶ 18, 55. As CSA's officers, they owed a fiduciary duty to IOU because it was one of CSA's creditors. See id. ¶¶ 7-8, 56. They breached that fiduciary duty by, *inter alia*, transferring CSA's assets to themselves and using CSA's assets to pay personal debts. See id. ¶¶ 57. Thus, IOU is entitled "to set aside the transfer and recover the monies paid to [Krychev and Vianna] as impermissible preferences." Ga. Commercial Stores, 342 Ga. App. at 547.

> Where the interest is a security interest, the measure of damages is the lower of the value of the converted property or the outstanding amount of the debt. After all, if all or a portion of the debt has been paid after conversion, the secured creditor would not be entitled to recover the portion that has been paid; the outstanding balance of the debt provides the ceiling for any monetary recovery the secured creditor could receive.

William Goldberg & Co., Inc. v. Cohen, 219 Ga. App. 628, 641 (1995) (internal quotation marks and citations omitted, alterations accepted, emphasis added). In its Motion for Default Judgment, IOU "concludes the value of the money paid to the individual Defendants from CSA after its insolvency and its converted property are equal to its debt per Count II" and requests "compensatory, consequential,

special[,] and nominal[] damages in Count III for the same amounts as and subsumed into its damages in Count II." Mot. for Default J. at 16.

It is axiomatic that these damages cannot be both "for the same amounts as" and "subsumed by" the damages in Count II. See, e.g., Subsume, AM. HERITAGE DICT. (5th ed. 2020). Regardless, the Court only awards damages against CSA and not Krychev and Vianna in Count II. Furthermore, although IOU asserts that the monies paid to "the individual Defendants" are equal to CSA's debt to IOU, the Amended Complaint does not identify what monies were paid to Krychev and Vianna after CSA's insolvency. IOU does not explain how it determined the amount of CSA's assets that were transferred to Krychev and Vianna.[8] Thus, the Court is unable to determine the appropriate amount of damages for Krychev's and Vianna's breach of fiduciary duty.

### 4.    Quantum Meruit (Count IV)

In Count IV of the Amended Complaint, IOU alleges that Krychev and Vianna, through Burke, induced IOU to confer the Loan funds, are unjustly enriched if not required to repay the Loan, and that IOU provided the funds

---

[8] IOU also requests $40,000.00 in punitive damages, but the Court is unable to determine if this is appropriate without an amount of actual damages. See generally O.C.G.A. § 51-12-5.1.

expecting repayment.  Am. Compl. ¶¶ 62, 64.  "Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof."  O.C.G.A. § 9-2-7.

> The essential elements of a claim of quantum meruit are that the provider performed services valuable to the recipient that were requested by or knowingly accepted by the recipient, that the recipient's receipt of the services without compensating the provider would be unjust, and that the provider expected compensation at the time the services were performed.

Sitterli v. Csachi, 344 Ga. App. 671, 671 (2018) (internal quotation marks, alteration, and citation omitted).  Quantum meruit claims "are considered actions at law."  Allen v. Peachtree Airport Park Joint Venture, 231 Ga. App. 549, 550 (1998) (citations omitted).

IOU conferred the valuable benefit of $100,000.00 in Loan funds upon Krychev and Vianna through the Loan to CSA.  Am. Compl. ¶¶ 7-8, 15-16, 62. Krychev and Vianna induced IOU to issue the Loan, and IOU did so with the expectation that it would be repaid.  Id. ¶¶ 27-28, 37, 68.  IOU has not been fully compensated for this benefit as CSA defaulted upon the Loan and it has not been fully repaid.  Id. ¶¶ 18, 26.  The Court finds that permitting Krychev and Vianna to retain the benefit of the Loan funds without compensating IOU would be unjust.

In the Amended Complaint, IOU demands judgment for the unpaid balance of the Loan funds plus interest and costs.  Id. ¶ 71.  However, "[t]he measure of

18

damages under quantum meruit or unjust enrichment is based upon the benefit conferred upon the recipient and not the cost to render the service or cost of the goods." Hollifield v. Monte Vista Biblical Gardens, Inc., 251 Ga. App. 124, 130-31 (2001) (internal quotation marks and citations omitted). "Proof of the express contract between the parties affords prima facie proof of the value of the services rendered, and as such is properly received in evidence even when recovery is sought upon quantum meruit and not upon the contract." G. Carbonara & Co. v. Helms, 205 Ga. App. 547, 547 (1992) (internal quotation marks and citations omitted). Nevertheless, "prejudgment interest cannot be awarded in a suit based upon quantum meruit." Sosebee v. McCrimmon, 228 Ga. App. 705, 709 (1997) (citation omitted). The Court finds that the value of the benefit conferred upon Krychev and Vianna was the Loan principal. Thus, IOU is entitled to the unpaid balance of the Loan funds, which is $104,543.72, including the $9,630.00 loan guaranty fee, from Krychev and Vianna.

### 5.    Money Had and Received (Count V)

In Count V of the Amended Complaint, IOU alleges that that Krychev and Vianna, through Burke, wrongfully induced IOU to confer the Loan funds, should not retain the funds and enrich themselves at IOU's expense, and that IOU is entitled to the funds in good conscience and equity. Am. Compl. ¶¶ 68-69. A

claim for money had and received "is comprised of the following elements: a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused." Fernandez v. WebSingularity, Inc., 299 Ga. App. 11, 13 (2009) (internal quotation marks and citation omitted). "Under this cause of action, the fact that the money was received from a third person will not affect the liability of the defendant, if, in equity and good conscience, he is not entitled to hold it against the *true owner*." Time Ins. Co. v. Fulton-DeKalb Hosp. Auth., 211 Ga. App. 34, 35 (1993) (internal quotation marks and citations omitted). "An action for money had and received is a legal action, founded upon the equitable principle that no one ought to unjustly enrich himself at the expense of another, and it is a substitute for an equity action." Cochran v. Ogletree, 244 Ga. App. 537, 539 (2000).

Krychev and Vianna received money from IOU through the Loan funds. Am. Compl. ¶¶ 16, 28. The loan was for CSA's business purpose, expanding its dietary product line. Id. ¶ 7. After receiving the Loan funds, Krychev and Vianna disposed of CSA's assets and rendered CSA insolvent. Id. ¶ 18. Krychev and Vianna did not make Loan payments and are in default on the Loan. Id. ¶ 26. Under these circumstances, the Court finds that Krychev and Vianna in equity and

good conscience should not be permitted to keep the Loan funds. IOU demanded

repayment of the Loan funds through Burke, and this demand was refused. Id.

¶ 70. Accordingly, IOU is entitled to recover the unpaid balance of the Loan funds

from Krychev and Vianna.

### 6.    Equitable Lien/Equitable Mortgage (Count VI)

In Count VI of the Amended Complaint, IOU requests that the Court declare

and impose an equitable lien or equitable mortgage on Krychev's and Vianna's

property and assets. Am. Compl. ¶ 76.

> A special lien on specific property may be decreed whenever the rules
> of equity require this remedy. One of those rules is that equitable relief
> is improper if the complainant has a remedy at law which is adequate,
> i.e., as practical and as efficient to the ends of justice and its prompt
> administration as the remedy in equity.

McArthur Elec., Inc. v. Cobb Cty. Sch. Dist., 281 Ga. 773, 774 (2007) (internal

quotations marks and citations omitted). "Equity will grant relief only where there

is no available adequate and complete remedy at law, and the availability of money

damages affords an adequate and complete remedy." McGlashan v. Snowden, 292

Ga. 450, 451 (2013) (internal quotation marks and citations omitted). Because

IOU can seek, and is entitled to, money damages against Krychev and Vianna,

supra parts III.B.3-5, an equitable lien or equitable mortgage would be improper.

21

### 7.     Constructive Trust (Count VII)

In Count VII of the Amended Complaint, IOU asserts that a constructive trust to satisfy the Loan instruments is implied on Krychev's and Vianna's property and assets.  Am. Compl. ¶ 80.  "A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."  O.C.G.A. § 53-12-132. "[A] constructive trust is a remedy created by a court in equity to prevent unjust enrichment."  Whiten v. Murray, 267 Ga. App. 417, 420 (2004) (internal quotation marks and citation omitted); see also United States v. Shefton, 548 F.3d 1360, 1365 (11th Cir. 2008) (citation omitted) (stating that under Georgia law, constructive trusts are "equitable remedies").  "[C]onstructive trusts are inherently equitable in nature and that equitable relief is available only in the absence of an adequate remedy at law."  Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1518 (11th Cir. 1994) (applying Georgia law).  Because IOU has an adequate remedy at law, a constructive trust would be improper.

### 8.   Attorney's Fees (Count VIII)

In Count VIII of the Amended Complaint, IOU asserts that CSA, Krychev, and Vianna acted in bad faith and were stubbornly litigious and IOU is therefore entitled to attorney's fees pursuant to O.C.G.A. § 13-6-11.[9]

> In Georgia, if a plaintiff in its original complaint puts the defendant on notice that it is seeking attorney fees and expenses under O.C.G.A. § 13-6-11 as part of the relief prayed for in the case, and if a default judgment is subsequently entered against the defendant for failing to answer the complaint, then the plaintiff is entitled to an award of attorney fees and expenses as a matter of law from the defendant having caused unnecessary trouble and expense.

Nat. Fire Ins. Co. of Hartford v. Thrasher Contracting, LLC, 142 F. Supp. 3d 1309, 1314-15 (N.D. Ga. 2015) (internal quotation marks omitted, alteration accepted) (quoting Water's Edge Plantation Homeowner's Ass'n, Inc. v. Reliford, 315 Ga. App. 618, 620 (2012)).  Both the original Complaint [Doc. 1] and Amended Complaint put Defendants on notice that IOU was seeking attorney's fees and expenses against Krychev and Vianna under O.C.G.A. § 13-6-11.  See Compl. ¶¶ 80-83; Am. Compl. ¶¶ 83-85.  Thus, IOU is entitled to attorney's fees and expenses against Krychev and Vianna.  See Nat. Fire Ins. Co., 142 F. Supp. 3d

---

[9] In its Motion for Default Judgment, IOU contends that it is entitled to this relief if CSA, Krychev, and Vianna are not found liable for attorney's fees in Count II. Mot. for Default J. at 20.  Only CSA is liable for attorney's fees in Count II.  Supra part III.B.2.

at 1315.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff IOU

Central, Inc. d/b/a IOU Financial, Inc.'s Motion for Final Default Judgment

Against Defendants Krychev, Gomez-Vianna, and CSA [Doc. 20] is **GRANTED**

**IN PART** and **DENIED IN PART**.  The motion is **GRANTED** with respect to:

(1) Count II, against Defendant CSA Nutrition, Inc. only; (2) Counts III, IV, and

V; and (3) Count VIII, against Defendants Alexander Krychev and Suzana Gomez

Vianna only.  In all other respects, the motion is **DENIED**.

It is further **ORDERED** that all claims against Defendants Anna M.

Wilewski-Turon and Wojciech Wilewski, as Trustees of the Wilewski Wojciech

Trust, are **DISMISSED**.

It is further **ORDERED** that, within fourteen (14) days of the date of this

Order, Plaintiff file a supplemental brief detailing the total damages the Court

should award against Defendant CSA Nutrition, Inc. and Defendants Krychev and

Suzana Gomez Vianna.

**IT IS SO ORDERED** this _29th_ day of October, 2020.

MARK H. COHEN
United States District Judge